UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| MELISSA DALTON, on behalf of the heirs of the estate of William Ruben Meadors, | ) ) ) ) |
| Plaintiff, | ) Civil Action No. 5: 19-215-DCR ) |
| V. | ) ) |
| RICHARD FERRIS, et al., | ) **MEMORANDUM OPINION** ) **AND ORDER** |
| Defendants. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Melissa Dalton claims that her father Dan Profitt is heir to the elusive Spindletop oil fortune.[1] The defendant attorneys were involved in litigation in the 1980s and 1990s concerning oil proceeds from Spindletop. Dalton asserts a host of claims against the defendants arising out of their representation of (or opposition to) Profitt during this litigation. The defendants have filed motions to dismiss based on lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted. [Record Nos. 20, 26] Because the Court does not have personal jurisdiction over the defendants, the motions will be granted, and the case will be dismissed.

---

[1] "The Spindletop oil field has been a leading source of oil production since 1901. The discovery of the 'Lucas Gusher' at Spindletop began the East Texas oil boom. Uncounted billions of dollars['] worth of oil have since been produced in the Spindletop field." *Clark v. Amoco Prod. Co.*, 908 F.2d 29, 30 n.1 (5th Cir. 1990) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 969 n.2 (5th Cir 1986)).

## I.

Brothers James and William Meadors moved to Beaumont, Texas in the early 1900s and drilled for oil in the Spindletop oil field during the Lucas Gusher. [Record No. 19 ¶ 16] According to the plaintiff, the brothers acquired portions of Spindletop, which eventually became worth billions of dollars. *Id.* ¶¶ 17-20.

The Meadors brothers disappeared in the early 1930s without having married or having produced children. *Id.* ¶ 21. But countless individuals claimed that they were heirs to the brothers' fortune in the years that followed. Cousins Dan Profitt and David Clark were two such persons. *Id.* ¶ 23. Profitt and Clark were named administrators of the Meadors estate in Allegheny, Pennsylvania in 1983. *See Clark v. Amoco Prod. Co.*, 794 F.2d 967, 969 (5th Cir. 1986). That same year, Profitt and Clark hired the Pennsylvania law firm Ferris, DiPaolo, and Russo to probate the estate. [Record No. 19. ¶ 26] In 1984, attorneys Ferris, DiPaolo, and George also represented Profitt and Clark in a civil action against four Texas oil companies for the value of oil that had been extracted from the Meadors property without payment. *See Clark*, 794 F.2d 967. Defendant Cynthia Timms represented the oil companies during that litigation. *Id.* ¶ 28.

The United States District Court for the Eastern District of Texas eventually granted summary judgment in favor of the oil companies. Profitt and Clark appealed to the United States Court of Appeals for the Fifth Circuit and oral argument was held in New Orleans, Louisiana, on June 6, 1990. *Clark v. Amoco Prod. Co.*, 908 F.2d 29 (5th Cir. 1990); [Record No. 19 ¶ 41] Profitt and Clark lost the appeal.

Now, jump forward a couple of decades. Jerry Kohake found two letters in his deceased father's safe and gave them to Profitt in the "fall of 2014." *Id.* ¶ 57. The first letter dated

January 22, 1987, purports to be from Defendant Ferris to an oil company attorney, rejecting a settlement offer of $25,000,000.00. *Id.* ¶ 58. The second letter dated May 28, 1990, purports to be from Ferris to Defendant Timms, accepting a settlement offer of $50,000,000.00. *Id.* ¶ 60. The letter also provides: "This Court action is essential for settlement and will eliminate the matter concerning heirs. We must be convincing in our performance to insure a successful outcome." [Record No. 19-8] Despite discovery of the letters and pre-existing suspicions about Ferris, Profitt apparently took no action. [Record No. 19 ¶¶ 47, 57] However, in May or June 2018, Dalton "discovered the letters in her father's possessions and immediately sought legal advice." *Id.* ¶ 65.

Dalton claims that Profitt and Clark were never informed of the settlement offers. In summary, she alleges that Ferris, DiPaolo, and George threw the case at the Fifth Circuit and absconded with $50,000,000.00 that was intended to settle Profitt's and Clark's claims against the oil companies. The defendants vigorously deny these allegations. Plaintiff Dalton brings claims of fraud, unjust enrichment, civil conspiracy, conversion, legal malpractice, and breach of fiduciary duty. Timms and the other defendants have filed separate motions to dismiss based on lack of personal jurisdiction, improper venue, and failure to state a claim pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. [Record Nos. 20, 26]

## II.

Personal jurisdiction over a defendant is an essential element of jurisdiction, without which the Court may not proceed to an adjudication. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 583, 584 (1999). And a plaintiff has the burden of proving that personal jurisdiction exists. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). "[I]n the face of a properly supported

motion for dismissal, the plaintiff may not stand on [her] pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id.* Because this issue will be decided based on written submissions, the plaintiff need only make a *prima facie* showing that personal jurisdiction exists. *See Serras v. First Tenn. Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). A prima facie showing of jurisdiction may be established based on the plaintiff's presentation of specific facts, by affidavit or otherwise. *Theunissen*, 935 F.2d at 1458. The court must accept the plaintiff's factual allegations as true. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002).

Personal jurisdiction can be general or specific. General jurisdiction arises when "a defendant's contacts with the forum state are of such a 'continuous and systematic' nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Third Nat. Bank in Nashville v. WEDGE Grp., Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989) (citing *Perkins v. Benguet Cons. Mining Co.*, 342 U.S. 437 (1952)). However, specific jurisdiction is established when the suit arises out of or is related to the defendant's contacts with the forum state. *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 455 U.S. 408, 414 n.8 (1984)). The plaintiff has not alleged that any defendant has carried on systematic conduct within the state of Kentucky and appears to concede that if jurisdiction over the defendants exists, it must be based upon specific jurisdiction.

For specific personal jurisdiction to exist in a diversity case, the exercise of jurisdiction must comport with the forum state's long-arm statute and constitutional due process. *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 679 (6th Cir. 2012). Kentucky's long-arm statute does not reach the outer limits of federal due process. *Caesars Riverboat Casino, LLC v.*

*Beach*, 336 S.W.3d 51, 56-57 (Ky. 2011) (discussing K.R.S. § 454.210). It provides that "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

1. Transacting business in this Commonwealth;

2. Contracting to supply services or goods in this Commonwealth;

3. Causing tortious injury by an act or omission in this Commonwealth;

4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth;

5. Causing injury in this Commonwealth to any person by breach of warranty expressly or impliedly made in the sale of goods outside this Commonwealth when the seller knew such person would use, consume, or be affected by, the goods in this Commonwealth, if he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth;

6. Having an interest in, using, or possessing real property in this Commonwealth, providing the claim arises from the interest in, use of, or possession of the real property, provided, however, that such in personam jurisdiction shall not be imposed on a nonresident who did not himself voluntarily institute the relationship, and did not knowingly perform, or fail to perform, the act or acts upon which jurisdiction is predicated;

7. Contracting to insure any person, property, or risk located within this Commonwealth at the time of contracting;

8. Committing sexual intercourse in this state which intercourse causes the birth of a child when: a. The father or mother or both are domiciled in this state; b. There is a repeated pattern of intercourse between the father and mother in this state; or c. Said intercourse is a tort or a crime in this state; or

9. Making a telephone solicitation, as defined in KRS 367.46951, or a charitable solicitation as defined in KRS 367.650 via telecommunication, into the Commonwealth.

Ky. Rev. Stat. § 454.210.

To satisfy the requirements of due process, a plaintiff must establish that the defendant purposefully availed himself of the privilege of acting in the forum state or that he intentionally caused a consequence in the forum state; the cause of action arose from the defendant's activities in the forum; and the defendant's acts or consequences caused by the defendant have a substantial enough connection with the forum to make the exercise of jurisdiction reasonable. *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 899 (6th Cir. 2017). Purposeful availment is the most important of these considerations and is satisfied by the "kind of substantial relationship with the forum that invokes, by design, the benefits and protections of its laws." *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1300 (6th Cir. 1989) (internal quotation marks and citation omitted). This requirement ensures that a defendant will not be haled into a jurisdiction solely because of random, fortuitous, or attenuated contacts. *Id.* (citing *Burger King*, 471 U.S. at 475). Each defendant's contacts must be assessed individually. *Beydoun v. Wataniya Holding, Q.S.C.*, 768 F.3d 499, 505 (6th Cir. 2014).

### A. Defendant Timms

Defendant Timms, a citizen of Texas, has filed a declaration stating that she has never been to Kentucky and has had no contact with the Commonwealth. [Record No. 20-1] Timms also has discussed each prong of the Kentucky long-arm statute and explained that she has not engaged in any conduct that would satisfy any prong. The plaintiff "believe[s] that Timms and/or agents at her employ conducted research in the State of Kentucky to determine if the heirs bringing the case in the 1980s were legitimate heirs to the Meadors Estate." [Record No.

25, p. 3] However, Dalton concedes that this does not constitute sufficient contacts to establish personal jurisdiction over Timms in Kentucky. Accordingly, she asks the Court to transfer her claims against Timms to the Eastern District of Texas.

### B. Defendants Ferris, Paolo, George, and Russo

Ferris, DiPaolo, George, and Russo are citizens of Pennsylvania. [Record No. 19, ¶¶ 5-8] In 1983, Profitt contacted the defendants' law firm in Pittsburgh and hired them to probate the Meadors estate in Pennsylvania. *See Clark*, 794 F.2d 967. Around that same time, Profitt and Clark hired Ferris, DiPaolo, and George to represent the estate in a civil action in the Eastern District of Texas. During the pendency of that lawsuit, Defendants Ferris and DiPaolo attended two meetings in Whitley City, Kentucky, during which Ferris "updated the Plaintiffs on the status of their case and solicited money from the Plaintiffs for their representation." [Record No. 19 ¶ 30] Ferris also allegedly "directed Plaintiffs to document their relation to the Estate in order to obtain a complete list of the heirs [he] and his law firm represented." *Id.* ¶ 32. There is no suggestion that Defendant George has ever been to Kentucky. Instead, it appears that his only contact with the state is having represented Kentucky citizens Profitt and Clark during oral argument in the Fifth Circuit in 1990. The Amended Complaint does not allege any conduct related to Russo or suggest that he has had any contacts with Kentucky.

The plaintiff does not identify which aspect of Kentucky's long-arm statute she believes describes these defendants' conduct. Instead, she merely alleges that "the action arises out of or is related to the Defendants' contacts with the state." *Id.* ¶ 11. The Court concludes, upon its own review of the allegations and the relevant case law, that these defendants do not have sufficient contacts with Kentucky to establish personal jurisdiction.

To begin, an individual's contract with an out-of-state party alone cannot automatically establish sufficient minimum contacts in the individual's home forum. *Burger King,* 471 U.S. at 478. Other courts have concluded that the bare existence of an attorney-client relationship is insufficient to confer personal jurisdiction over a non-resident attorney. *Trinity Indus. v. Myers & Assoc.*, 41 F.3d 229, 230 (5th Cir. 1995); *Exponential Biotherapies, Inc. v. Houthoff Buruma, N.V.*, 638 F. Supp. 2d 1, 8-9 (D.D.C. 2009) ("[S]everal circuits, as well as many district courts, have held that an attorney-client relationship does not subject a non-resident attorney or law firm to personal jurisdiction in its client's home forum where legal services were rendered outside of the client's home forum."). This is especially true where the defendants did not "reach out" to Kentucky to solicit Profitt's business. *See Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 151 (6th Cir. 1997).

Ferris and DiPaolo's attendance at two meeting in Kentucky in the mid-1980s is not enough to create personal jurisdiction over these defendants. *See Snider v. Steidley & Neal, PLLC*, No. 1:12-CV-423, 2013 WL 2403271, at *7 (E.D. Tenn. May 31, 2013) (citing *Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 226-27) (8th Cir. 1987) ("three-day visit by associate and law clerk as well as numerous phone calls was insufficient to establish personal jurisdiction"); *Dagen v. Book*, 249 F.R.D. 362 (D. Colo. 2008) (scattered contacts by attorney were not enough to establish personal jurisdiction). While regular representation of clients outside a firm's home state may favor exercising personal jurisdiction over the attorneys, Ferris and DiPaolo only came to Kentucky on two occasions and did not appear in any Kentucky court. *See Sawtelle v. Farrell*, 70 F.3d 1381, 1392 (1st Cir. 1995). These meetings were not indicative of a desire to do business in Kentucky and do not demonstrate purposeful availment or minimum contacts with the state. *See Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th

Cir. 2000) (examining course of parties' dealing to determine that corporate representative's two physical visits, and communication with Calphalon via telephone, fax, and mail, was not sufficient to establish personal jurisdiction).

Accordingly, the plaintiff has not established that this Court has personal jurisdiction over these defendants.[2] While she maintains that the defendants are subject to personal jurisdiction in this forum, she contends that venue is also proper in the Eastern District of Texas, and asks that her claims be transferred there.

**III.**

Once the Court has determined that it does not have personal jurisdiction over the defendants, it must either dismiss or transfer the case the case under 28 U.S.C. §§ 1406(a) and 1631. Section 1406 applies to actions that are brought in an impermissible forum and provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Section 1631 also applies to such actions. It states: "Whenever a civil action is filed in a court . . . and that court finds that there is want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other court . . . in which the action of appeal could have been brought at the time it was

---

[2] Dalton also named the law firm of Ferris, DiPaolo & Russo as a defendant. To the extent the law firm is sued as an entity separate from its individual attorneys, it appears that Dalton did not obtain an appropriate summons and serve the firm itself. Accordingly, it is likely that any claim against Ferris, DiPaolo & Russo should be dismissed pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. Regardless, Dalton has not pointed to any facts indicating that this Court has personal jurisdiction over the firm, so the same analysis applies to both the firm and its attorneys. *See* Fed. R. Civ. P. 12(b)(2).

filed." *See Jackson v. L&F Martin Landscape*, 421 F. App'x 482, 483 (6th Cir. 2009) (discussing relationship between 28 U.S.C. §§ 1406(a) and 1631).

If there is a court where the action could have been brought in the first instance, the court typically will transfer the action rather than dismiss it. *Darby v. United States Dept. of Energy*, 231 F. Supp. 2d 274, 277 (D.D.C. 2013). However, in determining whether to transfer or dismiss a case, the Court may take a peek at the merits to determine whether transfer would be in the interest of justice. *Giborowski v. Napolitano*, No. 1:13 CV 296, 2013 WL 3187255, at 2 (N.D. Ohio June 20, 2013) (citing *Phillips v. Seiter*, 173 F.3d 609, 610-11 (7th Cir. 1999)).

Here, Dalton's substitution for Profitt as a plaintiff appears to be an attempt to circumvent the applicable statute of limitations. Profitt was the named plaintiff in the original Complaint, filed on May 17, 2019. After the defendants filed motions to dismiss based on expiration of the statute of limitations in July 2019, Profitt was permitted to file an Amended Complaint, in which Dalton became the plaintiff and Profitt was removed from the case. However, the substantive allegations of the Amended Complaint are substantially similar to those in the original Complaint.

Profitt allegedly discovered the purported "smoking gun" letters in 2014, putting him outside the statute of limitations with respect to at least some of his claims. *See Wachovia Bank, N.A. v. Ferretti*, 935 A.2d 565, 574 (Pa. Super. Ct. 2007) (two or four-year statute of limitations for legal malpractice action); *Doe v. Golden & Walters, PLLC*, 173 S.W.3d 260 (Ky. Ct. App. 2005) (one-year statute of limitations); *Turnbull v. Thensted*, 757 So.2d 145, 149 (La. Ct. App. 2000) (three-year statute of limitations); *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tx. 1988) (two-year statute of limitations). Conveniently, Dalton discovered the letters in 2018, which would likely render her action timely.

Dalton's connection to the case is attenuated, at best, and it is far from clear that she has standing to bring these claims on behalf of the heirs of the estate. Profitt and Clark were appointed as the administrators of the Meadows estate, not Dalton. And while Dalton purports to represent heirs of the estate, it appears that she is not an heir herself. An heir is "[s]omeone who, under the laws of intestacy, is entitled to receive an intestate decedent's property." BLACK'S LAW DICTIONARY (11th ed. 2019).

According to the Amended Complaint, Profitt's great grandfather was the decedents' brother. Since Profitt is in closer consanguinity to the Meadors brothers and is still living, it does not appear that Dalton has a present interest with respect to the Meadors estate. *See* 20 Pa. Code § 2104(1) ("The part of the estate passing to [the issue of the decedent's parents] shall be divided into as many equal shares as there shall be persons in the nearest degree of consanguinity to the decedent living . . . ."]; Tex. Estates Code § 201.001 ("If neither the person's father nor mother survives the person, the person's entire estate passes to the person's siblings and the siblings' descendants. . . . [Descendants] of an intestate who stand in the first or same degree of relationship and come into distribution of the intestate's estate take per capita."); K.R.S. §§ 391.010, 391.030; *Ryburn v. First Nat. Bank of Mayfield*, 399 S.W.2d 313 (Ky. 1965) (person claiming to be heir at law must show that those standing in an intervening relationship to the decedent are dead); LA. CIV. CODE ANN. art. 892 ("If the deceased leaves neither descendants nor parents, his brothers or sisters or descendants from them succeed to his separate property in full ownership to the exclusion of other ascendants and collaterals.").

Dalton also is unlikely to have standing to bring these claims because they sound in malpractice. Dalton was not involved in the prior litigation, was never the defendants' client,

and apparently was entirely unknown to the defendants. *See Haddy v. Caldwell*, 355 S.W.3d 247, 251 (Tx. Ct. App. 2011) (privity necessary for standing to bring legal malpractice claim); *Guy v. Liederbach*, 459 A.2d 744, 751-51 (Pa. 1983) (privity required unless plaintiff is named legatee of will drafted by attorney-defendant); *Prince v. Buck*, 969 So.2d 641, 645-46 (La. Ct. App. 2007) (privity required); *Pete v. Anderson*, 413 S.W.3d 291 (Ky. 2013) (privity not required, but plaintiff must have had a "reasonable belief or expectation" relating to the attorney's representation of the plaintiff's legal interests).

Accordingly, the interests of justice neither support nor require transfer of this matter. Instead, it will be dismissed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

**IV.**

Based on the foregoing analysis, it is hereby

**ORDERED** as follows:

1. The defendants' motions to dismiss [Record No. 20, 26] are **GRANTED**.

2. The Amended Complaint is dismissed, without prejudice.

Dated: October 29, 2019.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky